[Cite as *Jefferson Child Support Enforcement Agency v. Roberts*, 2016-Ohio-8216.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JEFFERSON COUNTY CHILD SUPPORT ENFORCEMENT AGENCY, ON BEHALF OF: THE STATE OF FLORIDA, ET REL., TYRA ELAINE ROBERTS, MOTHER AND NEXT FRIEND OF MARK DAKOTA ROBERTS C/O OFFICE OF CHILD SUPPORT ENFORCEMENT LAKE COUNTY INTERSTATE UNIT, | ) ) ) ) ) ) ) ) ) ) | CASE NO. 16 JE 0005 |
| | ) | OPINION |
| PETITIONER-APPELLEE | ) ) | |
| V. | ) ) | |
| STEVEN CHARLES ROBERTS, | ) ) ) | |
| RESPONDENT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from Court of Common Pleas, Juvenile Division of Jefferson County, Ohio
Case No. 2010-CV-17

JUDGMENT: Affirmed

APPEARANCES:
For Petitioner-Appellee                No brief filed

For Respondent-Appellant            Attorney Mary F. Corabi
424 Market Street
Steubenville, Ohio 43952

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: December 16, 2016

DONOFRIO, P.J.

{¶1} Appellant, Steven Roberts, appeals from a Jefferson County Common Pleas Court judgment finding that his adult son is disabled and ordering his child support order to continue.

{¶2} Appellant and appellee, Tyra Roberts, share a son, Mark. Mark was the subject of a child support order that was put in place on October 7, 2010. Appellant was the obligor and appellee was the obligee. The support order would have terminated on Mark's nineteenth birthday (October 17, 2014).

{¶3} On November 20, 2014, the Jefferson County Child Support Enforcement Agency (CSEA) filed a motion for determination as to whether the support order should continue past Mark's nineteenth birthday. The motion asserted there was an issue as to whether Mark is mentally and/or physically disabled and incapable of supporting himself such that the support order would continue into his adulthood.

{¶4} The trial court held a hearing on the motion. Appellee, acting pro se, participated via telephone since she and Mark reside in Florida. The court listened to appellee's testimony and testimony from a vocational expert that appellant presented. The court also considered numerous medical records submitted by appellee.

{¶5} The court found that Mark is disabled at this time and unable to support himself. Therefore, the court ordered that child support would continue. The court also found, however, that it was not convinced the disability was permanent. Therefore, it stated it would hold a review hearing on February 1, 2017.

{¶6} Appellant filed a timely notice of appeal on February 18, 2016. He now raises two assignments of error.

{¶7} Appellant's first assignment of error states:

THE COURT ERRED AND IT WAS AN ABUSE OF DISCRETION IN FAILING TO EMANCIPATE THE ADULT SON AND TO CONTINUE SUPPORT.

{¶8} Appellant argues the trial court erred in ordering him to pay support for Mark. He points out that no doctor testified on Mark's behalf. He further asserts

there was no evidence that Mark has a difficult time caring for himself and there was no medical evidence as to why Mark does not have a driver's license. Appellant claims that while there was evidence that Mark has had various health problems, there was no evidence that he is disabled and unable to support himself. He contends the trial court only relied on appellee's self-serving statements. Appellant further points to testimony that although Mark uses an electric wheelchair, he is still employable. Finally, appellant asserts the trial court failed to say why Mark is disabled or what conditions render him disabled.

{¶9} In reviewing matters concerning child support, appellate courts look at whether the trial court abused its discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶10} Pursuant to R.C. 3119.86(A)(1), the duty of support to a child imposed pursuant to a court child support order shall continue beyond the child's eighteenth birthday only under certain specified situations. One of those specified situations is when "[t]he child is mentally or physically disabled and is incapable of supporting or maintaining himself or herself." R.C. 3119.86(A)(1)(a). Thus, in order to continue a child support order into adulthood, the court must find (1) that the subject of the support order is disabled, either physically or mentally and (2) the subject of the support order is incapable of supporting or maintaining himself or herself.

{¶11} In this case, the trial court found that Mark is disabled based on appellee's testimony and the "massive" amount of medical records in support of her testimony. The court also found that Mark is unable to support himself. Thus, the court made both of the required findings under the statute.

{¶12} The evidence introduced at the hearing supports the trial court's findings.

{¶13} Appellee testified that Mark was diagnosed with epilepsy at age three when he had his first seizure. (Tr. 13). Then at age four, he was diagnosed with

eosinophilic esophagitis, which is a digestive tract disease that causes his body to attack his esophagus, stomach, and colon when he eats. (Tr. 12, 14). Consequently, he must take steroids to be able to eat. (Tr. 12). The steroids have caused osteoporosis, which started when Mark was six years old. (Tr. 12, 14). The osteoporosis has led to more than ten compression fractures in Mark's back and caused him to be on daily pain medication. (Tr. 12). The bone compressions have also led to scoliosis and kyphosis, which requires him to wear a back brace. (Tr. 12). The medication for osteoporosis, which Mark has been on since age six or seven, caused necrosis of his jaw resulting in his teeth chipping away. (Tr. 12-13). Appellee testified that Mark also suffers from Crohn's Disease and chronic migraines. (Tr. 12). Additionally, he suffers from multiple seizures every day. (Tr. 12). And Mark suffers from social anxiety and depression. (Tr. 13).

**{¶14}** Appellee testified that Mark has a hospital bed at home. (Tr. 15). She also stated that he has an electric wheelchair that he uses if he has to walk for more than 20 or 30 minutes. (Tr. 15). Additionally, she stated that Mark takes 30 to 40 pills a day to treat all of his conditions. (Tr. 18). She stated that the medications cause numerous side effects, one of which is fatigue so Mark frequently naps during the day. (Tr. 15).

**{¶15}** Appellee testified that Mark is able to bathe and feed himself. (Tr. 17). But she helps him organize his medications. (Tr. 17-18). Appellee stated that she had a teacher come to her house to home school Mark until he was 16 years old. (Tr. 18-20). At that time, Mark had completed the eighth grade. (Tr. 20). Currently, appellee was helping Mark to try and obtain his GED. (Tr. 20).

**{¶16}** Appellee stated that Mark was denied Social Security Disability benefits in 2009. (Tr. 40). He was then approved for benefits in 2012, but when he turned 18 the benefits stopped. (Tr. 21, 40-41). She stated they were in the process of trying to get disability benefits for Mark as an adult. (Tr. 21-22). However, the letter that most recently denied Mark's benefits stated that the Social Security Administration determined that Mark's condition was not severe enough to keep him from working. (Tr. 43).

**{¶17}** Appellee testified that Mark has never worked. (Tr. 24). He does not have a driver's license. (Tr. 24). Appellee stated that Mark cannot get his driver's license because he has daily seizures. (Tr. 24).

**{¶18}** According to a February 4, 2015 report by Mark's pain management doctor, Mark is physically unable to work and support himself. (Tr. 57-58; Ex. E). Additionally, according to another of Mark's treating physicians, in a letter dated October 3, 2014, Mark "has permanent disability, cannot work, and needs constant medical supervision." (Ex. D). The same physician opined, Mark "needs a special bed, and can barely walk, let alone work and support himself financially." (Ex. D).

**{¶19}** In addition to her testimony, appellee presented Mark's voluminous medical records documenting the conditions she testified to.

**{¶20}** In support of his position, appellant presented Linda Dezack, a vocational expert with the Social Security Administration. Dezack stated that she provides vocational expert testimony to administrative law judges to help them determine whether a person is employable. (Tr. 79). She stated that she reviewed Mark's medical records. (Tr. 82-86, 100). Dezack stated there was no medical evidence that Mark could not drive. (Tr. 84). She further opined that since Mark could walk 20 minutes at a time, he could walk 20 percent of the day thereby making him employable. (Tr. 88). She further stated that Mark was able to operate a computer and could therefore get a data entry job. (Tr. 88). She stated he could also get a job in system surveillance where he would watch monitors. (Tr. 89). She also stated Mark could become a graphic artist. (Tr. 89).

**{¶21}** Dezack stated that she based her opinions only on Mark's medical records since he turned eighteen. (Tr. 93). She stated she saw nothing in Mark's medical records that osteoporosis, Crohn's disease, migraines, scoliosis, kyphosis, necrosis of the jaw, social anxiety, or depression would render him unable to work. (Tr. 93-95). She also stated there was nothing in any of his medical records stating that Mark was disabled. (Tr. 95). Dezack discounted letters from two different physicians stating that Mark was disabled and unable to work. (Tr. 97-98; Ex. D, E). She stated the letters were just opinions. (Tr. 97-98).

**{¶22}** On cross examination, Dezack stated that she was not giving an opinion as to whether Mark could work full-time, part-time, or "casual time." (Tr. 102). She was only determining whether he could work at all. (Tr. 102). Dezack admitted that she was neither a doctor, nor a medical expert. (Tr. 104). Furthermore, Dezack stated that she did not consider a single medical record from before Mark's eighteenth birthday. (Tr. 114-117). She stated that Mark's earlier medical history did not exist in her review and did not play a part in her opinion that he was able to work. (Tr. 106, 108). Therefore, because she did not see a specific diagnosis in Mark's records after he turned eighteen for acute pain, compression fractures, or epilepsy, she did not consider these conditions in reaching her opinion. (Tr. 115-116).

**{¶23}** The evidence supports the trial court's findings. The evidence of Mark's numerous, serious medical conditions, which have been ongoing since age three, was uncontroverted. Moreover, two of his treating physicians opined in their letters that Mark was unable to work. The evidence was also uncontroverted that Mark requires a hospital bed, an electric wheelchair, a back brace, and 30 to 40 pills daily. He also suffers daily seizures and therefore cannot drive. And while Dezack opined that Mark was able to work, she admitted that she did not consider any of Mark's medical history before he turned eighteen. Moreover, she did not offer an opinion as to whether Mark was capable of work full-time, part-time, or "casual time." Mark would not be able to support himself working part-time or "casual time." Thus, he would require the child support order in either of these situations.

**{¶24}** Moreover, the trial court found that Mark's disability may not be permanent. Therefore, it scheduled a review hearing on February 1, 2017. Presumably, if Mark's condition improves, the court will discontinue the child support order.

**{¶25}** Based on the above, we cannot conclude that the trial court abused its discretion in continuing the child support order.

**{¶26}** Accordingly, appellant's first assignment of error is without merit and is overruled.

**{¶27}** Appellant's second assignment of error states:

THE COURT ERRED IN NOT GRANTING RESPONDENT'S MOTION TO DISMISS.

**{¶28}** In this assignment of error, appellant contends the trial court should have granted his motion to dismiss at the conclusion of the hearing. He asserts the trial court should have dismissed the matter because appellee introduced medical evidence that was hearsay. He asserts the medical records appellee submitted did not comply with Evid.R. 803(6) because they were not kept in the regular course of business.

**{¶29}** Appellant has waived this issue on appeal. At the conclusion of her testimony, appellee sought to introduce Mark's medical records. (Tr. 75). She had provided the medical records to appellant's counsel and the CSEA prior to the hearing. (Tr. 74).

**{¶30}** Appellant objected to the admission of the medical records and moved to dismiss the matter at the conclusion of appellee's case. (Tr. 68-69). Appellant argued that all of Mark's medical records were inadmissible hearsay. (Tr. 70-71). He complained that the medical records did not comply with the business records exception set out in Evid.R. 803(6). (Tr. 73). At that time the court indicated that it would be inclined to consider the medical records but it did not yet rule on the issue. (Tr. 73-75).

**{¶31}** Appellant then called his witness, Linda Dezack. Dezack based her testimony and her opinion that Mark could work on Mark's medical records, which she reviewed prior to the hearing. (Tr. 80, 82-86, 93).

**{¶32}** At the conclusion of Dezack's testimony, appellant again objected to the admission of Mark's medical records. (Tr. 123). The court agreed to give appellant a week to brief the issue before ruling on whether the medical records were admissible. (Tr. 123-124). The court stated, however, that if the medical records were inadmissible, then it would not consider Dezack's testimony because it was based entirely on her review of the medical records. (Tr. 124-125).

**{¶33}** Appellant had two attorneys representing him at the hearing. The court

stated to one of appellant's attorneys:

> THE COURT:  So, if - - if - - if the medical records go out, you lost your expert.
>
> MS. CORABI [one of appellant's attorneys]:  Yeah, I agree with that.

(Tr. 125).

**{¶34}** Appellant's other attorney then had the following colloquy with the court:

> THE COURT: * * * I think in a motion they come into that - - you know, hearsay is one of those discretionary things where I can - - I can take it or not take it.  That's what I think but if that's wrong, then show me I'm wrong and I'll not take it.  I'm more than happy to be shown I'm wrong if I'm wrong.
>
> MR. MASCIO [appellant's other attorney]:  Well, I guess we'll let it in because I don't want to lose, my expert testimony.
>
> THE COURT:  What's that?
>
> MR. MASCIO:  I don't want to lose the expert's testimony.
>
> THE COURT: Oh, you definitely lose her because she doesn't know anything other than the records that you're saying are inadmissible.
>
> MR. MASCIO:  Right.
>
> THE COURT:  So - - so, I mean, the whole basis of her testimony is - - is those records.
>
> MR. MASCIO:  Right.  Then I'm thinking I would have nothing to refute what she says.
>
> THE COURT:  What's that?
>
> MR. MASCIO:  The expert's the only individual refuting what mom is saying.  So, all right.
>
> THE COURT:  I mean, you see how everything she says is based on the records that you might be getting rid of if you write the

brief.

>MR. MASCIO:  Okay.  Okay.
>
>THE COURT:  Okay?
>
>MR. MASCIO:  You're good with that?
>
>MS. CORABI:  Yeah.
>
>THE COURT:  Okay.  Everybody is satisfied with that?  Okay.

(Tr. 129-130).

**{¶35}** As can be seen from the above quoted exchanges, both of appellant's attorneys agreed to the admission of Mark's medical records.  Counsel made a calculated decision that it was in appellant's best interest to have the medical records admitted because without them, appellant's expert testimony would not be considered by the court.  Therefore, appellant cannot now argue on appeal that the court erred in admitting the medical records.

**{¶36}** Accordingly, appellant's second assignment of error is without merit and is overruled.

**{¶37}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

Robb, J., concurs.